Filed 11/14/23  P. v. Odell CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>FLOYD ODELL,<br><br>Defendant and Appellant. | B324487<br><br>(Los Angeles County Super. Ct. No. BA436727) |

APPEAL from an order of the Superior Court of Los Angeles County, Ronald S. Coen, Judge.  Affirmed.

Karyn H. Bucur, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, and Michael C. Keller and Charles S. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Floyd Odell (defendant) appeals from the trial court's denial of his Penal Code section 1172.6 (former section 1170.95) petition seeking resentencing on prior convictions for murder (one count) and attempted murder (two counts).[1] We consider whether the trial court correctly found defendant did not make a prima facie case for relief because his trial jury was not instructed on felony murder, aiding and abetting liability pursuant to the natural and probable consequences doctrine, or any theory that would permit imputing malice to defendant.

## I. BACKGROUND

### A. *The Offense Conduct, as Established by the Evidence at Trial*

James Freeman (James) testified he and his wife were about to enter their car on May 12, 2015, when he turned to see the flash of a gun. He was shot once in the groin. He did not see who shot him and he did not recognize defendant at trial. His wife, Pamela Freeman (Pamela), testified she knew defendant from previous encounters. She saw defendant approach her husband, shoot him once, and fire multiple shots at her—with one bullet hitting her hand.

Elisha Bables (Bables) testified regarding a separate incident that occurred on May 18, 2015. According to Bables, Charles Wilson (Wilson), defendant, and friends gathered in Wilson's home for "dominoes, cards, [and] drinking." Defendant and Wilson argued sporadically over "[m]iscellaneous, frivolous

---

[1] Undesignated statutory references that follow are to the Penal Code.

things." Defendant left, but returned a short time later "banging on the door." Bables and Wilson went outside to talk to him. Bables was walking in front of Wilson and defendant when she heard shots, turned around, and saw defendant "grabbing" Wilson. She saw Wilson "sliding down the side of the house" and "it looked like [defendant] was shooting him." Bables begged defendant not to hurt her and he left.

At trial, defendant testified he accidentally shot Pamela and James. As for Wilson, defendant testified someone else shot him. Defendant claimed Wilson approached defendant with a gun, defendant hit him, and around the same time, an unknown third party fired shots in their direction and defendant reacted by using Wilson "like a shield." Defendant claimed he tried to revive Wilson, who had been shot, by "pumping his chest" but left the scene when defendant was unsuccessful.

### B. Charges, Jury Instructions, and Judgment

Defendant was charged with the murder of Wilson, attempted murder of Pamela and James, assault with a firearm on Pamela and James, and possession of a firearm by a felon.

The jury instructions relevant to the murder and attempted murder charges included CALJIC No. 8.10 (defining murder), CALJIC No. 8.11 (malice aforethought), CALJIC No. 8.20 (deliberate and premeditated murder), CALJIC No. 8.30 (unpremeditated murder of the second degree), CALJIC No. 8.31 (second degree murder—killing resulting from unlawful act dangerous to human life), CALJIC No. 8.66 (attempted murder), CALJIC No. 8.67 (attempted murder—willful, deliberate, and premeditated), CALJIC No. 8.70 (duty of jury as to degree of murder), CALJIC No. 8.71 (doubt whether first or second degree

3

murder), and CALJIC No. 8.74 (unanimous agreement as to offense—first or second degree murder).[2]

The jury found defendant guilty of the second degree murder of Wilson and found various firearm enhancements to be true, including that defendant "personally and intentionally discharged a firearm, to wit: handgun, which caused death to Charles Wilson, within the meaning of . . . section 12022.53[, subdivision] (d) . . . ." The jury also found defendant guilty of the willful, deliberate, and premeditated attempted murder of Pamela. It again found various firearm enhancements to be true, including that defendant "personally and intentionally discharged a firearm, to wit: handgun, which caused great bodily injury to Pamela . . . , within the meaning of . . . section 12022.53[, subdivision] (d). The jury further found defendant guilty on both counts of assault with a firearm (again finding various firearm enhancements to be true) and possession of a firearm by a felon. The jury was not able to reach a verdict on the charge of attempting to murder James.

With the associated firearm enhancements, the trial court sentenced defendant to an indeterminate Three Strikes law sentence of 50 years to life in prison for the murder of Wilson, 25 years to life in prison for the attempted murder of Pamela, and life in prison for one of the assault with a firearm convictions. Sentences on other counts and for other enhancements were stayed.

---

[2]     This court granted the Attorney General's request that we take judicial notice of the jury instructions. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

*C.    Section 1172.6 Petition*

Defendant filed a section 1172.6 petition for resentencing in April 2022.  After appointing counsel for defendant and receiving briefing, the trial court held a hearing and denied defendant's petition based on his failure to make a prima facie case for relief.

At the hearing, defendant's attorney argued the court should issue an order to show cause and hold an evidentiary hearing because "[his] feeling [was] . . . that the—the continuing ar[c] of jurisprudence published about this statute continually bends toward more and not less in terms of allowing a petitioner to have to in court litigate the petition on the merits not [*sic*] an evidentiary hearing.  [¶]  And it's an extremely rare case that someone is simply barred as a matter of law from being able to have an O.S.C.  [Defendant's attorney] was remembering a discussion that . . . [Senate Bill No.] 775 specified that the court can look at an appellate opinion in a matter for the limited purpose of determining case procedural history.  And [defendant's attorney] suddenly remembered an 1170.95 case that [he] had maybe a year and a half ago, somewhere in the—where the appellate opinion actually misstated the procedural history.  And had . . . an O.S.C. not been granted and had an evidentiary hearing not been held, that never would have emerged because we wouldn't have had access to all the documents, to the original certified court documents, the trial transcript and the clerk's transcript.  [¶] . . . [T]hat's why the court should err on the side of caution and err on the side of the spirit of the statute and grant an evidentiary hearing and hold one.  Whatever the result, whatever the issues that might be present at an evidentiary hearing . . . the . . . predominant tone of all the case law that's

published on this matter is for conducting a hearing and being able to litigate it."

The trial court declined to issue an order to show cause. Citing *People v. Harden* (2022) 81 Cal.App.5th 45, the court observed the jury instructions and the verdicts conclusively established, with no fact finding or weighing of the evidence necessary, that defendant was convicted as the actual killer and therefore ineligible for relief as a matter of law. The trial court emphasized that, in this case, "[t]he only theory of murder and attempted murder was malice which would be express for the attempted murder."[3] The trial court also cited the jury's true findings as to the various firearm enhancements.

## II. DISCUSSION

Defendant's only challenge to the trial court's finding that he failed to make a prima facie case for relief under section 1172.6 is an invocation of his trial attorney's feeling that courts ought to err on the side of issuing an order to show cause and holding an evidentiary hearing. This is not the law. If, after briefing and argument, "the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause." (§ 1172.6, subd. (c).) If, on the other hand, "the petition and record in the case establish

---

[3] The reporter's transcript indicates the trial court also said "[t]he only instruction of felony murder natural and probable consequences were given in the verdicts." It is not clear what the trial court might have meant by this. There were no written instructions as to felony murder or the natural and probable consequences doctrine and no references to these theories in the verdict forms.

conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition." (*People v. Strong* (2022) 13 Cal.5th 698, 708; accord *People v. Lewis* (2021) 11 Cal.5th 952, 971 ["The record of conviction will necessarily inform the trial court's prima facie inquiry . . . , allowing the court to distinguish petitions with potential merit from those that are clearly meritless"].)

Here, the trial court correctly determined the record of conviction conclusively establishes defendant was not "convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime" or "attempted murder under the natural and probable consequences doctrine." (§ 1172.6, subd. (a).) The jury instructions (and the true findings on the firearm enhancements) establish defendant was convicted as the actual (attempted) killer, not on any theory of criminal liability that did not involve his own mens rea. (*Harden, supra*, 81 Cal.App.5th at 52 ["if the record shows that the jury was not instructed on either the natural and probable consequences or felony-murder doctrines, then the petitioner is ineligible for relief as a matter of law"].)

In addition to challenging the denial of his section 1172.6 petition, defendant contends the case should be remanded to the trial court so that court can exercise discretion conferred by Senate Bill No. 620 (2017–2018 Reg. Sess.) to strike or dismiss certain firearm enhancements. If the argument is advanced independent of the aforementioned argument for reversal that we have rejected, it is still wrong. "[T]he authority to strike or dismiss a firearm enhancement applies only to nonfinal judgments or to final judgments where the defendant is being

7

resentenced under some other law." (*People v. Baltazar* (2020) 57 Cal.App.5th 334, 341.)  Defendant will not be resentenced under section 1172.6 and his criminal judgment is final.

## DISPOSITION

The order denying defendant's section 1172.6 petition is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

We concur:

RUBIN, P. J.

KIM, J.